Donald J. Kula, Bar No. 144342
DKula@perkinscoie.com
Monica M. Ortiz, Bar No. 259282
MOrtiz@perkinscoie.com
Sunita Bali, Bar No. 274108
SBali@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Thomas L. Boeder (*Admitted pro hac vice*)
TBoeder@perkinscoie.com
Amanda J. Beane (*Admitted pro hac vice*)
Abeane@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Defendant*
*Redbox Automated Retail, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLLE DISIMONE, individually, and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability company, and DOES 1 – 500,<br><br>   Defendants. | Case No. 2:11-cv-02936-JHN-Ex<br><br>CONSOLIDATED CLASS ACTION<br><br>**REDBOX AUTOMATED RETAIL LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>[*Declarations of Amanda Beane, Eric Hoersten, Amy Gibby, and Nick Lullo in Support of Opposition to Motion for Class Certification concurrently filed herewith*] |
| JOHN SINIBALDI, individually, and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability company, and DOES 1 – 100, inclusive,<br><br>   Defendants. | Date:   October 24, 2011<br>Time:   2:00 p.m.<br>Judge :  Jacqueline H. Nguyen<br>Courtroom: 790 |

1

2

# CONTENTS

Page

I.   INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF THE CASE ................................................................ 1

III.   STATEMENT OF FACTS ....................................................................... 3

    A.   Redbox's Business ........................................................................ 3

    B.   Redbox Does Not Misuse PII ...................................................... 4

        1.   Redbox's marketing practices ........................................... 5

        2.   Redbox uses ZIP codes to protect
            consumers ........................................................................... 5

        3.   Redbox uses emails to communicate
            with its customers in compliance
            with federal law and at their request ................................ 7

    C.   Plaintiffs' Complaint and the Song-Bervely
        Act ................................................................................................ 8

IV.   PLAINTIFFS HAVE NOT CARRIED THEIR
    BURDEN TO SHOW THAT THE PROPOSED CLASS
    COMPLIES WITH RULE 23 .................................................................. 9

    A.   Legal Standard ............................................................................. 9

    B.   Plaintiffs Are Not Adequate
        Representatives Because the Relief Sought
        Is Detrimental to Other Class Members .................................... 10

    C.   The Class Is Overly Broad and Not
        Ascertainable ............................................................................. 13

        1.   The class is overly broad because it
            includes scenarios not covered by the
            Act ................................................................................... 14

            a.   The Act does not apply to online
                transactions ............................................................ 15

            b.   The Act applies to purchases, not rentals ............ 15

            c.   The Act does not apply to Redbox's
                collection of email because Redbox is in
                compliance with federal law ................................ 17

1

2

**CONTENTS**
**(continued)**

Page

3          d.     The Act does not apply to Redbox's collection of email because it is not a condition of the transaction ................................. 17

2.     The class is not objectively ascertainable because it requires an inquiry into the customer's state of mind ................................................................. 19

D.     Plaintiffs' Claims Lack Commonality Under Rule 23(a)(2) ......................................................... 20

E.     A Rule 23(b)(3) Class Is Not Appropriate Because Common Issues Do Not Predominate ............................................................ 22

F.     Plaintiffs Are Not Typical or Adequate Representatives of the Proposed Class Because There Is No Evidence They Purchased from Redbox ...................................... 23

V.    PLAINTIFFS HAVE NOT SHOWN THAT THE PROPOSED CLASS NOTICE COMPLIES WITH RULE 23 ................................................................. 24

VI.   CONCLUSION ........................................................... 25

1

# TABLE OF AUTHORITIES

2

**Page**

3

**<u>Cases</u>**

4

*Absher v. AutoZone, Inc.*,

5

 164 Cal. App. 4th 332, 78 Cal. Rptr. 3d 817 (2008) .............................. 2, 3, 4, 5

6

*Adashunas v. Negley*,

7

 626 F.2d 600 (7th Cir. 1980) ...................................................... 14, 15

8

*Alston v. Va. High Sch. League, Inc.*,

 184 F.R.D. 574 (W.D. Va. 1999) ...................................................... 12

9

*Broussard v. Meineke Discount Muffler Shops, Inc.*,

10

 155 F.3d 331 (4th Cir. 1998) .......................................................... 13

11

*Carnegie v. Household Int'l, Inc.*,

12

 371 F. Supp. 2d 954 (N.D. Ill. 2005).................................................. 24

13

*Dukes v. Wal-mart*,

14

 509 F.3d 1168 (9th Cir. 2007) ...................................................... 20, 23

15

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,

16

 431 U.S. 395, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977) ..................................... 10

17

*Eisen v. Carlisle & Jacquelin*,

18

 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) ..................................... 25

19

*Endres v. Wells Fargo Bank*,

20

 2008 WL 344204 (N.D. Cal. Feb. 6, 2008).................................................. 21, 24

21

*Florez v. Linens' N Things, Inc.*,

 108 Cal. App. 4th 447, 133 Cal. Rptr. 2d 465 (2003) ....................................... 18

22

*Hanlon v. Chrysler Corp.*,

23

 150 F.3d 1011 (9th Cir. 1998) ........................................................ 22

24

*Hanon v. Dataproducts Corp.*,

25

 976 F.2d 497 (9th Cir. 1992) .......................................................... 23

26

*In re TJX Cos. Retail Sec. Breach Litig.*,

27

 246 F.R.D. 389 (D. Mass. 2007) ...................................................... 20

28

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3
4
*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*
    268 F.R.D. 604 (N.D. Cal. 2010) ........................................................ 23

5
6
*Kingsepp v. Wesleyan Univ.,*
    142 F.R.D. 597 (S.D.N.Y. 1992) ........................................................ 23

7
8
*Morris v. Wachovia Sec., Inc.,*
    223 F.R.D. 284 (E.D. Va. 2004) ........................................................ 13

9
*Mueller v. CBS, Inc.,*
    200 F.R.D. 227 (W.D. Pa. 2001) ................................................... 13, 21

10
11
*O'Connor v. Boeing N. Am., Inc.,*
    184 F.R.D. 311 (C.D. Cal. 1998) ...................................................... 13

12
13
*Oshana v. Coca-Cola Bottling Co.,*
    225 F.R.D. 575 (N.D. Ill. 2005), *aff'd,* 472 F.3d 506 (7th Cir. 2006).......... 15, 20

14
15
*Pineda v. Williams-Sonoma Stores, Inc.,*
    51 Cal. 4th 524, 120 Cal. Rptr. 3d 531 (2011) ...........................passim

16
17
*Rodriguez v. Gates,*
    2002 WL 1162675 (C.D. Cal. May 30, 2002)................................... 13

18
19
*Saulic v. Symantec Corp.,*
    596 F. Supp. 2d 1323 (C.D. Cal. 2009)......................................passim

20
21
*Simer v. Rios,*
    661 F.2d 655 (7th Cir. 1981) ............................................................ 20

22
*Sosna v. Iowa,*
    419 U.S. 393, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975) ................. 10, 23

23
24
*Starbucks Corp. v. Superior Court,*
    168 Cal. App. 4th 1436, 86 Cal. Rptr. 3d 482 (2008) ................. 14, 18

25
26
*Stearns v. Ticketmaster Corp.,*
    __ F.3d. __, 2011 WL 3659354 (9th Cir. Aug. 22, 2011).................. 20

27
28
*Sweet v. Pfizer,*
    232 F.R.D. 360 (C.D. Cal. 2005) ...................................................... 23

1

2

<div align="center">

**TABLE OF AUTHORITIES**
**(continued)**

</div>

<div align="right">

**Page**

</div>

3

4

*Thomas v. NCO Fin. Sys., Inc.*,
    2003 WL 22416169 (E.D. Pa. Oct. 21, 2003) ....................................................24

5

6

*Ungar v. Dunkin' Donuts of America, Inc.*,
    531 F.2d 1211 (3d Cir. 1976) .............................................................................22

7

8

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) .......................................9, 20, 21, 23

9

**Rules and Regulations**

10

12 C.F.R. 202 ....................................................................................................7

11

12 C.F.R. § 205.9(a) ...............................................................................7, 12, 17

12

12. C.F.R. § 205.9(e) ...........................................................................................7

13

66 Fed. Reg. 15,187, 15,188 (Mar. 15, 2001) ......................................................7

14

Fed. R. Civ. P. 23...........................................................................................9, 20

15

Fed. R. Civ. P. 23(a) ...............................................................................9, 10, 13

16

17

Fed. R. Civ. P. 23(a)(2)....................................................................................20

18

Fed. R. Civ. P. 23(b) ..........................................................................................9

19

Fed. R. Civ. P. 23(b)(3) ...............................................................................9, 22

20

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................24

21

Notice of Study, 69 Fed. Reg. 29,308, 29,309 (May 22, 2004) ...............................7

22

**Statutes**

23

24

Cal. Civ. Code § 1747.08.................................................................................14

25

Cal Civ. Code § 1747.08(a)(2) .........................................................................17

26

Cal Civ. Code §1747.08(c)(1) ..........................................................................16

27

Cal Civ. Code § 1747.08(c)(3) .........................................................................17

28

<div align="right">

REDBOX'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION

</div>

**TABLE OF AUTHORITIES**
(continued)

Page

Video Privacy Protection Act, 18 U.S.C. § 2710(b)(2)............................................ 11

Video Protection Privacy Act of 1988, 18 U.S.C. § 2710......................................... 6

**Other Authorities**

5 James Wm. Moore et al., Moore's Federal Practice § 23.21[1] (3d ed. 2011)..... 13

Assem. Bill No. 1219 (2011-2012 Reg. Sess.)......................................................... 5

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1790, at 595-96 (3d ed. 2005)................................... 22

Federal Trade Commission, *Facts for Consumers*, http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre07.shtm. ........................ 11

Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/condition. .................................................................... 17

Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1219 (2011-2012 Reg. Sess.) as amended Sept. 1, 2011 ...................... 5

*Target Sued for Collecting Customer Zip Codes*, 17 No. 1 *Westlaw J. Bank & Lender Liability* 4 (2011)......................................................................................... 8

1  **I.     INTRODUCTION**

2         The Court should deny class certification in this case on several grounds.

3  First, class certification is not appropriate because the relief that plaintiffs seek is

4  directly contrary to the interest of the class they wish to certify.  In particular, class

5  relief would prevent the only means that Redbox Automated Retail, LLC

6  ("Redbox") has available to deter credit card fraud and communicate with its

7  customers, including providing them receipts, to the detriment of Redbox users.

8         Moreover, the putative class is extremely overbroad as it would include

9  many individuals who suffered no violation of the Song-Beverly Credit Card Act

10  (the "Act"), even assuming *arguendo* that the Act applies to Redbox.  In addition,

11  the putative class is far from objectively ascertainable as demonstrated by the need

12  to determine for each member whether he or she perceived the request for an email

13  as a condition to the credit card transaction.  For this same reason, the class that

14  plaintiffs seek to certify lacks commonality; and individual issues in need of

15  adjudication predominate over common issues.

16         Finally, plaintiffs are not adequate or typical representatives of the putative

17  class because the Act explicitly applies to purchases only, but not to rental

18  transactions.  Mr. Sinibaldi, however, only rented from Redbox, and never

19  purchased, and Ms. DiSimone made no purchase with her own credit card.

20         For these and other reasons addressed below, Defendant Redbox respectfully

21  requests that the Court deny Plaintiffs' Motion for Class Certification ("Motion").

22  **II.    STATEMENT OF THE CASE**

23         Redbox is a popular and fast-growing business with innovative and

24  customer-friendly service that has generated millions of consumer transactions in

25  California in 2010 alone.  Redbox operates automated, unmanned, electronic video

26  rental kiosks ("kiosks")—not brick-and-mortar stores—throughout California.

27  Redbox customers enjoy this automated service in which, similar to Internet

28  transactions, customers do not interface with any other person.

1   Redbox protects consumer privacy at its kiosks by requesting ZIP codes in
2   an effort to deter fraud and assist in identifying customers, if they later call Redbox
3   customer service.  Redbox also offers customers the option to provide email
4   addresses to Redbox, if they want the convenience of an electronic receipt and to
5   receive other communications from Redbox.  Redbox never uses customer ZIP
6   codes or email addresses for any other reason and never shares or sells customer
7   ZIP codes or email addresses.  In this way, Redbox complies with the essential
8   purposes of the Act—to protect consumer privacy and deter fraud.  *Saulic v.*
9   *Symantec Corp.*, 596 F. Supp. 2d 1323, 1334 (C.D. Cal. 2009); *Absher v.*
10  *AutoZone, Inc.*, 164 Cal. App. 4th 332, 345, 78 Cal. Rptr. 3d 817 (2008).
11  Through this action, plaintiffs seek to alter, and possibly destroy, the very
12  features of Redbox's business that make it a viable, consumer-friendly business.
13  The relief plaintiffs seek would prevent Redbox from protecting its customers'
14  privacy, providing receipts, and communicating with its customers.  Plaintiffs
15  therefore are inadequate representatives of the class they seek to represent, and, in
16  fact, seek relief that conflicts with the best interests of the putative class.
17  Plaintiffs' class definition also is impermissibly overbroad.  Plaintiffs define
18  the class as *any* California credit card holder from whom Redbox has requested
19  and recorded personal identification information ("PII"), no matter the
20  circumstance surrounding the request, contrary to case law and statutory
21  exceptions.  Plaintiffs' class definition therefore includes many who could not have
22  experienced a violation of the Act, *e.g.,* those who rented online at
23  www.redbox.com, those who provided their credit card as a deposit for the rental
24  rather than for a purchase, and those who chose to provide an email in order to
25  receive receipts and marketing materials.
26  Moreover, the class is not objectively ascertainable because determining
27  class membership requires an inquiry into whether individuals perceived the
28  request for email as a condition to the credit card transaction.  For similar reasons,

1  the plaintiffs' claims are neither common nor typical, and individualized issues

2  predominate.  Plaintiffs are neither typical nor adequate because there is no

3  evidence that they purchased from Redbox or purchased using their own credit

4  card, and the Act applies to purchases only.

5       Contrary to plaintiffs' suggestion, Redbox is not continuing to violate—and

6  has never violated—the Act.  Altering its business practices before adjudicating

7  these issues and obtaining a ruling on the Motion to Dismiss, which largely

8  presents questions of first impression, would cause hardship for Redbox and be

9  detrimental to its customers.  As a result, Redbox has continued its business

10  operations in good faith compliance with the law and in the best interests of its

11  customers.

12  ## III.   STATEMENT OF FACTS

13      **A.   Redbox's Business**

14      Redbox rents and sells DVDs, Blu-ray discs, and video games through

15  automated, self-service kiosks:



23      Redbox's model for renting movies and video games is simple:  discs are

24  rented for a low daily fee (most DVDs cost $1 a day) up to a maximum amount.

25  Declaration of Amy Gibby ("Gibby Decl.") ¶ 4.  Redbox also sells a limited

26  number of used movies at some kiosk locations.  *Id.* ¶ 5.  Redbox locates its kiosks

27  in convenient, accessible locations, including in and outside grocery stores, drug

28

1    stores, and fast-food restaurants. *Id.* ¶ 4.  Membership is not required to rent or

2    purchase a movie or video game—i.e., it is not necessary to sign up for an account

3    and provide Redbox with personal information in order to rent or purchase.

4    Rather, anyone with a credit or debit card (collectively, "payment card") may do

5    so. *Id.* Because neither an account nor advance reservations are required,

6    consumers can rent and physically obtain movies or video games at their

7    convenience without interfacing with another person.  This flexible, accessible,

8    private, and low-cost self-service has contributed greatly to Redbox's success.

9         Redbox kiosks are fully automated and unattended by Redbox employees

10   during the rental or purchase transaction. *Id.* ¶ 7.  To rent or purchase a movie or

11   video game, a customer uses the kiosk's touchscreen and pays by swiping a

12   payment card. *Id.* ¶ 5.  At the time of rental, the customer is charged only for the

13   first night's fee.  A customer is charged for any remaining fees when he or she

14   returns the discs, or, if the customer does not return the discs, when the maximum

15   rental period is reached.  These latter fees are assessed to the same payment card

16   that was swiped at the time of rental, without requiring the customer to swipe the

17   payment card again.  Declaration of Eric Hoersten ("Hoersten Decl.") ¶ 4.

18        While Redbox kiosks are located inside and outside various retail locations,

19   employees of those businesses are not responsible for Redbox machines.  Gibby

20   Decl. ¶ 7. The kiosks, however, are not isolated machines.  All kiosks are

21   connected to the Internet and communicate with Redbox servers.  Hoersten Decl.

22   ¶ 3.

23        Redbox's innovative, accessible and affordable rental service has made it a

24   popular and fast-growing company.  It currently has over 27,000 kiosks

25   nationwide, with over 3,000 located in California.  Gibby Decl. ¶ 3.

26   **B.    Redbox Does Not Misuse PII**

27        Plaintiffs correctly assert that "the primary legislative purpose of the Act

28   was to 'address the misuse of personal information for, inter alia, marketing

purposes.'"  Motion at 1 (citing *Absher*, 164 Cal. App. 4th at 345).  In addition, the Act seeks to deter fraud.  *Absher*, 164 Cal. App. 4th at 345.  What plaintiffs do not say is that they seek relief for a practice that not only causes no harm but also protects consumers, because, as detailed below, Redbox does not use any PII for unwanted marketing communications, but instead to promote privacy and deter fraud.[1]

### 1. Redbox's marketing practices.

Consistent with the purposes of the Act—and contrary to the facts presented in *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 120 Cal. Rptr. 3d 531 (2011)—Redbox does not engage in unwanted marketing communications with its customers.  Redbox's direct marketing communications are limited to those customers *who choose to receive them*.  Redbox neither mails nor telemarkets its customers.  Redbox *does not know the addresses or phone numbers of its kiosk customers*, and *it makes no attempt to discover them*.  Redbox never shares or sells its customers' ZIP codes or email addresses with anyone else.[2]  Gibby Decl. ¶ 9-11.

### 2. Redbox uses ZIP codes to protect consumers.

Redbox requests customer ZIP codes at the kiosk to protect consumer privacy, deter fraud, and satisfy credit card processing requirements.

---

[1] In this regard, the California legislature recently approved Assembly Bill 1219, which exempts from the Act the collection of ZIP codes for the prevention of fraud in retail motor fuel transactions.  This bill awaits the governor's signature.  Assem. Bill No. 1219 (2011-2012 Reg. Sess.), *see* Exhibit G to Beane Decl.  The amendment is a result of the effort of the strong oil/gas lobby and a direct response to *Pineda*.  Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1219 (2011-2012 Reg. Sess.) as amended Sept. 1, 2011, pp. 1, 3-4, *see* Exhibit H to Declaration of Amanda J. Beane ("Beane Decl.").  The amendment does not represent a change in the law but rather confirmation in light of *Pineda* that collection of PPI to protect privacy and prevent fraud is not a violation of the Act.  Sen. Judiciary Com., Bill Analysis of Assem. Bill No. 1219 (2011-2012 Reg. Sess.) as amended Aug. 24, 2011, pp. 3-7, *see* Exhibit I to Beane Decl.  This is entirely consistent with the collection of PII at automated kiosks to protect privacy and prevent fraud, which is allowed, and is, and has been, the law.

[2] While Redbox uses an email service provider, Redbox's agreement with its email service provider prohibits the sale or dissemination of customer information, including emails to third parties.  Gibby Decl. ¶ 11.  Redbox shares limited information with its email service provider, and, for example, does not tell its email service provider what specific movies its customers have rented.  *Id.*  Redbox has on a few occasions emailed its customers with studio promotions to buy a movie they have recently seen.  In so doing, Redbox does not share its customer information with the studio and sends the email as a benefit to its customers.  *Id.* ¶ 9.

1   When a customer calls Redbox with questions about a transaction, Redbox

2   customer service agents look up his account by asking for his name, the last four

3   digits of his credit card, his ZIP code, and confirmation that the person speaking is

4   the cardholder.  Declaration of Nicholas Lullo ("Lullo Decl."), ¶ 2.  Redbox takes

5   these steps to verify a customer's identity before discussing his account in order to

6   protect a customer's private rental history.  *Id.*  Indeed, federal law requires that

7   Redbox not disclose video rental history to anyone other than the customer (except

8   in limited situations).  Video Protection Privacy Act of 1988, 18 U.S.C. § 2710.

9   Thus, Redbox's instruction to its customer service agents to request customers' ZIP

10  codes is consistent with federal law.  Lullo Decl., ¶ 2.

11  Moreover, Redbox asks for a customer's ZIP code at the kiosk because doing

12  so is a simple and non-intrusive way to help prevent credit card fraud.[3]  In fact,

13  Visa requires that Redbox obtain a customer's ZIP code for certain transactions in

14  order for Redbox to receive the lowest processing rate possible.  Hoersten Decl.,

15  ¶ 5.  That is, Visa charges a lower rate for automated transactions that it deems to

16  be less risky, including where a customer provides his or her ZIP code when using

17  a credit card.  *Id.*  Redbox's request for ZIP codes, therefore, is considered by Visa

18  to be a less risky practice than if Redbox were to accept credit cards without

19  requesting customer ZIP codes.

20  Redbox does not use a customer's ZIP code for any other purposes.

21  Plaintiffs may assert that Redbox uses ZIP codes to target emails for special

22  promotions but Redbox does not do so.  Rather, all location-targeted promotions

23  *rely on the location of the kiosk from which the customer rented, not customer ZIP*

24  *codes*.  Gibby Decl., ¶ 12.

25

26

27       [3]  A rental transaction may be approved even if a customer enters an incorrect ZIP code.
    However, the credit card provider retains discretion as to whether to decline a transaction if the ZIP code
28  does not match.  Hoersten Decl., ¶ 6.

### 3.   Redbox uses emails to communicate with its customers in compliance with federal law and at their request.

Redbox does not require a customer to enter an email address as a condition of a transaction—providing an email is always optional.  After swiping a credit card, the customer is presented with a screen where he can either provide an email address or touch "No Thanks" and proceed with the transaction.  Gibby Decl. Exs. A, B.

Providing an email address allows the customer to receive receipts for the transaction, and, indeed, it is the only way to receive receipts because the kiosks are not equipped to provide paper receipts.  Gibby Decl. ¶ 10.  Regulations promulgated under the Electronic Funds Transfer Act ("EFTA") obligate Redbox to make receipts available every time a consumer initiates an electronic fund transfer at the kiosk.  12 C.F.R. § 205.9(a).[4]  Both Visa and MasterCard require that Redbox offer customers the option of a receipt.  Hoersten Decl. ¶ 8.  While Visa and MasterCard require the availability of a receipt when a transaction reaches a certain minimum (currently, $50), any Redbox transaction could potentially meet those minimums.  *See* Gibby Decl., ¶ 4 (discussing maximum rental fees for DVDs, Blu-ray, and video games).  Without an option for an electronic receipt, Redbox risks violating federal law and disrupting its essential relationships with Visa and MasterCard.

---

[4] An "electronic terminal" under 12 C.F.R. § 205.9(a) includes a point-of-sale ("POS") terminal that "captures data electronically, for debiting or crediting a consumer's asset account . . . even if no access device is used to initiate the transaction." 12 C.F.R. 202, supp. I, cmt. 2(h)-2.  Redbox is precisely that kind of POS terminal.  Moreover, while, on its face, 12 C.F.R. § 205.9(a) applies to financial institutions, Federal Reserve commentary makes clear that merchants at POS terminals are also obligated to provide receipts.  *See id.*, cmt. 9(a)-2 ("An account-holding institution may make terminal receipts available through third parties such as merchants or other financial institutions."); *see also* Electronic Fund Transfers, 66 Fed. Reg. 15,187, 15,188 (Mar. 15, 2001) ("merchant[s] must comply with the receipt requirements of § 205.9 of the regulation for debit card transactions"); Notice of Study, 69 Fed. Reg. 29,308, 29,309 (May 22, 2004) ("Consequently, when a debit card is used at point-of-sale, the merchant provides a terminal receipt that contains the information that the account-holding institution is required to provide to the consumer.").  In addition, while there is an exception for amounts under $15, 12. C.F.R. § 205.9(e), Redbox has no way of knowing at the time of the initial transaction whether or not any given transaction will be under $15, *see* Gibby Decl. ¶ 4 (discussing rental charges).

---

To those customers who choose to provide email addresses and receive receipts, Redbox also sends promotional emails. *Id.* ¶ 9. A customer can opt out of these emails at any time. *Id.*

### C.   Plaintiffs' Complaint and the Song-Beverly Act

Plaintiffs have rented from Redbox and continue to use Redbox. Mr. Sinibaldi has never purchased from Redbox; it is unclear whether Ms. DiSimone has; at the least, she never used her own credit card.[5] Both complain that Redbox's requests for a ZIP code and an email address (which is optional) during a kiosk transaction violate the Act.

The California legislature enacted the relevant portions of the Act in 1990. The Act regulates the collection and recordation of PII when made as a condition of a credit card transaction. As noted, its primary purposes are to protect consumer privacy and prevent fraud. While the Act defines PII to include an address, not until *Pineda* did the California Supreme Court hold (in light of egregious facts) that a ZIP code, without more, constitutes PII. 51 Cal. 4th at 528. After *Pineda*, at least one source reported that, as of May 2011 more than 150 lawsuits had been filed against retailers in California, including this one. *See Target Sued for Collecting Customer Zip Codes*, 17 No. 1 *Westlaw J. Bank & Lender Liability* 4 (2011).

The Central District of California has held that the Act applies to transactions in brick-and-mortar stores only, not to non-traditional retailers such as online retailers, given that, unlike brick-and-mortar retailers, online retailers can deter credit card fraud only by collecting PII. *Saulic*, 596 F. Supp. 2d at 1335-36.

---

[5] Mr. Sinibaldi's most recent rental appears to have occurred on September 11, 2011. Beane Decl., Ex. B. While plaintiffs' motion asserts that Ms. DiSimone has rented from Redbox numerous times, her interrogatory responses state that she has rented only once during the relevant time period. Beane Decl., Ex. A (Rog. No. 1). Redbox's records indicate two rentals, one occurring recently. Lullo Decl., ¶ 3. Ms. DiSimone states that she "believe[s]" she purchased a DVD from Redbox. Beane Decl., Ex. A (Rog. No. 1). Her deposition testimony indicated she may have used her wife's payment card. DiSimone Dep. at 17:1-20:21; *see* Ex. D to Beane Decl. Redbox did find a record for a DVD purchase under Ms. DiSimone's wife's name, Amy DiSimone.

Because Redbox is a non-traditional retailer that operates like an online store, it has moved to dismissed plaintiffs' Complaint under *Saulic*, and because of other deficiencies in the Complaint. That motion remains pending. Even assuming that the Act applies, class certification should be denied, as discussed below.

## IV.   PLAINTIFFS HAVE NOT CARRIED THEIR BURDEN TO SHOW THAT THE PROPOSED CLASS COMPLIES WITH RULE 23

### A.   Legal Standard

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374 (2011) (internal quotations and citation omitted). To justify departing from this rule, plaintiffs must affirmatively demonstrate compliance with Rule 23. *Id.* at 2548. The Court must apply a strict burden of proof and conduct a "rigorous" analysis to determine whether certification is proper. *Id.* at 2551. This analysis will frequently overlap with the merits of plaintiff's claim—"class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 2551-52 (internal quotations and citation omitted).

A party seeking class certification must establish first that the mandatory requirements of Rule 23(a) are met: (1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the named plaintiffs are typical of the claims of the class (i.e., the typicality requirement), and (4) that the named plaintiffs will fairly and adequately represent the class (i.e., the adequacy requirement).

In addition, the plaintiff must establish that at least one subsection of Rule 23(b) is met. Plaintiffs seek certification under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Plaintiffs gloss over these requirements and incorrectly assert that they have satisfied their burden.  Having proposed relief that is in conflict with the desires of other class members, defined a class that includes those who have suffered no violation and that cannot be ascertained, and failed to meet the standards of typicality, adequacy, or commonality, plaintiffs' Motion must be denied.

### B. Plaintiffs Are Not Adequate Representatives Because the Relief Sought Is Detrimental to Other Class Members

Plaintiffs do not satisfy the adequacy requirement of Rule 23(a) because the relief they seek—to prevent Redbox from the very practices that protect privacy and deter fraud—conflicts with the interests of other class members.  It is fundamental to the adequacy requirement that class representatives have common interests with the unnamed members of the class.  *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975) (Rule 23(a) is met "where it is unlikely that segments of the class appellant represents would have interests conflicting with those she has sought to advance."); *see also E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977) (holding plaintiffs are not appropriate class representatives when they seek relief in conflict with the desires of the other members of the class).

Here, the named plaintiffs seek to impose liability on Redbox for the collection of ZIP codes and emails on behalf of an entire class.  As a necessary result of this relief, Redbox would be forced to stop requesting ZIP codes and email addresses in California.  Because, plaintiffs' interests are distinctly at odds with the interests of the class, the class should not be certified.

First, Redbox's request for a ZIP code at the kiosks benefits the class because this request acts as a deterrent to credit card fraud.  Redbox kiosks are unmanned, and there is no method other than requesting and recording PII to help verify the identity of the cardholder.  An in-person transaction is obviously different.  The Central District of California recognized this when holding that the

1   Act applies to brick-and-mortar transactions only:  "[A]n in-person transaction
2   provides the merchant with the opportunity to check the customer's signature on
3   her credit card against the signature on the credit card slip.  Additionally, the
4   merchant can ask for picture identification to compare the person in front of them
5   to the name on the credit card."  *Saulic*, 596 F. Supp. 2d at 1335 (citation omitted).

6        Redbox has none of these means available to it and "without a request for
7   PII, [it] must ultimately accept payment with nothing more than a name and a
8   credit card number—there is no 'verification.'"  *Id.*  There can be little doubt that
9   the average Redbox customer would prefer that Redbox take non-intrusive steps to
10  deter and protect them against credit card fraud, as opposed to eliminating a
11  practice that causes no harm.[6]  Moreover, if Redbox were prohibited from
12  requesting ZIP codes, its payment processing fees would be higher because these
13  transactions are less safe, potentially resulting in higher Redbox fees for its
14  customers.  Hoersten Decl. ¶ 7.

15       In addition, Redbox uses ZIP codes to protect customer privacy.  When a
16  customer calls customer service seeking information regarding a transaction,
17  Redbox requests four pieces of information to verify the customer's identity:  the
18  person's name, the last four digits of the credit card used, the ZIP code entered at
19  the kiosk, and verification that the person speaking is the card holder.  Lullo Decl.,
20  ¶ 2.  In this way, Redbox does its best to ensure that it does not share rental
21  transaction history with anyone but the renter.  This not only is consistent with the
22  Act, which was passed to "protect consumer privacy," *Saulic*, 596 F. Supp. 2d at
23  1333, but also is consistent with federal privacy law, and, specifically, the Video
24  Privacy Protection Act, 18 U.S.C. § 2710(b)(2) (limiting disclosure of a person's
25  video rental history).  Plaintiffs' relief would undermine the very steps that Redbox
26  has taken to comply with federal law and protect consumer privacy.

27
28       [6] *See* Fed. Trade Comm'n, Facts for Consumers (credit card fraud costs hundreds of millions of dollars each year), http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre07.shtm.

1       The elimination of Redbox's ability to request email addresses likewise

2   would negatively impact Redbox customers.  Because Redbox kiosks do not

3   provide paper receipts, the *only way* Redbox can provide receipts is by collecting

4   email addresses.  *See* Gibby Decl. ¶ 10.  The receipts confirm the amount Redbox

5   charged and the successful return of a disc.  Customers consistently provide

6   feedback to Redbox that they like and desire email receipts *and* promotional emails

7   from Redbox.  *Id*.¶ 13, Ex. C.  Mr. Sinibaldi conceded that he liked receiving email

8   receipts from Redbox.  Sinibaldi Dep. at 35:9-20, Ex. C to Beane Decl.

9       Moreover, Redbox *must* make a receipt available under federal law.  12

10   C.F.R. § 205.9(a); *see also* fn 4.  As Redbox kiosks are not equipped to provide

11   paper receipts, the only way to do so is to provide the option of an email receipt.

12   Moreover, Visa and MasterCard require that Redbox make receipts available.

13   Hoersten Decl. ¶ 8.  Without this option, Redbox could violate federal law or

14   negatively impact its essential relationships with credit card companies, and

15   possibly end Redbox's ability to do business in California.  This cannot be the

16   result desired by Redbox's California customers, and it seems unlikely that the

17   California legislature intended to stifle innovation in the retail industry by applying

18   the Act to eliminate the use of email receipts in an online transaction.

19       In sum, plaintiffs seek class relief that would eliminate valuable and

20   desirable features for many customers, including protecting them from fraud and

21   promoting personal privacy, in contravention of the very purpose of the Act.  This

22   is particularly troublesome given that Redbox's innovative and consumer-friendly

23   service is used by millions of customers.  Indeed, both plaintiffs have continued to

24   use Redbox since filing the Complaint, which suggests that they wish to continue

25   to use Redbox's services as they are.  Beane Decl., Ex. B; Lullo Decl., ¶ 3.

26       Courts have denied class certification where the class representative sought

27   relief that was in conflict with other class members, in particular where relief

28   would impact those who remained in relationship with the defendant.  *Alston v. Va.*

1  *High Sch. League, Inc.*, 184 F.R.D. 574 (W.D. Va. 1999) (conflict between relief

2  sought by named plaintiffs and class members who preferred status quo precluded

3  plaintiffs from satisfying adequacy and typicality requirements); *see also Morris v.*

4  *Wachovia Sec., Inc.*, 223 F.R.D. 284, 299 (E.D. Va. 2004) (former client seeking to

5  rescind investment services on behalf of all current and former clients not adequate

6  representative because "it is reasonable to conclude that a number of those who

7  remain invested in the Masters Program would not want to nullify their investment

8  relationships").[7]  This is also analogous to a former franchisee owner improperly

9  seeking to represent current franchisee owners.  *See Broussard v. Meineke*

10  *Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998) (current

11  franchisees not adequate representatives for former franchisees as they have

12  interest in franchisor defendant's financial strength and thus sought different relief).

13       The Court should likewise deny class certification in this case.

14       **C.    The Class Is Overly Broad and Not Ascertainable**

15       Plaintiffs also fail to carry their burden for class certification because they

16  define an overly broad class that is incapable of being defined through objective

17  means.  "The proposed class may not be amorphous, vague, or indeterminate and it

18  must be administratively feasible to determine whether a given individual is a

19  member of the class."  *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 233 (W.D. Pa. 2001)

20  (internal quotations and citations omitted).  *See also Rodriguez v. Gates*, 2002 WL

21  1162675, at *8 (C.D. Cal. May 30, 2002) ("A class definition should be 'precise,

22  objective and presently ascertainable.'") (quoting *O'Connor v. Boeing N. Am., Inc.*,

23  184 F.R.D. 311, 319 (C.D. Cal. 1998)); 5 James Wm. Moore et al., Moore's

24  Federal Practice § 23.21[1] (3d ed. 2011) ("Although the text of Rule 23(a) is silent

25

26  _____

27       [7]  Unlike some class actions, withdrawal from this class by those members who do not seek the same result as the named plaintiffs would not solve the conflict.  Relief on a class basis, no matter who

28  opts out, must, at best, result in Redbox eliminating features that are desirable and beneficial to its customers in general, and, at worst, eliminate Redbox's ability to effectively do business in California.

on the matter, a class must not only exist, the class must be susceptible of precise definition.") (footnotes omitted) (internal quotations and citations omitted).

Plaintiffs define the class as all "California credit card holders, from whom, within one year of the filing date of this action to the present, Defendant requested and recorded personal identification information in the course of a credit card transaction."[8]  Proposed Order Granting Class Certification at 2.  The class is overly broad because it wrongly assumes that any request and recordation of PII that is "in the course of a credit card transaction" violates the Act.  It fails to account for relevant exceptions to the statute and the fact that a request for PII violates the Act only if it is a *condition* of the credit card transaction—an element of the statute that requires an individualized inquiry into each class member's state of mind and thus cannot be objectively ascertained.

### 1.    The class is overly broad because it includes scenarios not covered by the Act.

A class is overly broad and imprecise where, as here, it contains those who have not suffered a violation of the Act.  It is a fundamental tenet of class certification that the proposed class members must "have all suffered a constitutional or statutory violation warranting some relief."  *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (denying class certification where class included all learning disabled children who were not receiving special education; not clear that all proposed class members had suffered a violation).  "Where civil liability is predicated upon a legislative provision . . . plaintiffs must establish that they fall within the class of persons for whose protection the legislative provision was enacted."  *Starbucks Corp. v. Superior Court*, 168 Cal. App. 4th 1436, 1448, 86 Cal. Rptr. 3d 482 (2008).

---

[8] Redbox assumes that by "California credit card holders," plaintiffs mean California residents who used a credit card (as opposed to a debit card) at a Redbox kiosk, given that the Act applies to credit card transactions only.  *See* Cal. Civ. Code § 1747.08 (act applies to "credit cards"); *Saulic*, 596 F. Supp. 2d at 1328-29.  If a class is certified, this should be made clear in the class definition and class notices.

1   Courts have accordingly denied class certification where it "cannot be

2   reasonably clear" that the proposed class contained those who have suffered a

3   violation.  *Adashunas*, 626 F.2d at 604; *see also Oshana v. Coca-Cola Bottling*

4   *Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005) (class definition was "overly inclusive

5   and encompasse[d] millions of potential members without any identifiable basis

6   for standing"), *aff'd*, 472 F.3d 506 (7th Cir. 2006).

7   <center>**a.      The Act does not apply to online transactions.**</center>

8   First, plaintiffs' class definition is overly broad because it fails to distinguish

9   between online reservations and kiosk transactions.  As discussed above, in *Saulic*,

10   the court held that the Act applies only to brick-and-mortar transactions, not online

11   transactions.  596 F. Supp. 2d at 1335.[9] *Id.*

12   Redbox offers customers the choice to either reserve movies or video games

13   online at www.redbox.com or to rent from a kiosk without a reservation.  When

14   customers reserve movies online, they provide their payment card information and

15   pay their first night's rental fee through the website, rather than at the kiosk.  Gibby

16   Decl., 6.  Once at the kiosk, they swipe their card only for the purpose of retrieving

17   the reservation they made online.  Accordingly, because customers reserving

18   movies or video games at www.redbox.com pay online, their transactions are not

19   within the purview of the Act and they have no standing to assert a claim.  The

20   failure to distinguish between online reservations and kiosk transactions renders

21   the class definition impermissibly overbroad.

22   <center>**b.      The Act applies to purchases, not rentals.**</center>

23   Second, plaintiffs' class definition is overly broad because it encompasses

24   both *rentals* of movies and video games and *purchases* of movies and video

25   games.  The Act, however, expressly applies to purchases only.

26   The Act's prohibition on requesting and recording PII in connection with a

27   credit card transaction does not apply "[i]f the credit card is being used as a deposit

---

28   [9] For this same reason, the Act should not apply to Redbox.  *See* Motion to Dismiss, Dkt. 15-1.

1  to secure payment in the event of a default, loss, damage, or other similar

2  occurrence."  Cal. Civ. Code §1747.08(c)(1).  Redbox retains a customer's credit

3  card information in order to charge a consumer for any rental charges that are

4  incurred in excess of the first night's charge.[10]  Thus, the credit card is "used as a

5  deposit to secure payment in the event of a default, loss, damage, or other similar

6  occurrence."  That is, here, the credit card is used to secure payment in the event of

7  additional rental charges or the failure to return the movie or video game.

8      While the Court need look no further than the plain language of the Act to

9  determine that it does not apply to rentals from Redbox, the legislative history of

10  the Act also supports this conclusion.  *See Pineda*, 51 Cal. 4th at 531 (court should

11  look to legislative history when statute is unclear).  The legislative history states

12  that "[t]he . . . language [of Cal. Civ. Code § 1747.08(c)(1)] also clarifies that

13  personal information such as addresses and phone numbers can be recorded when a

14  credit card is used as a deposit when renting equipment, for example.  That is to

15  protect the merchant in case rented goods are not returned."  Assemblyman Rusty

16  Areias, Bill Background for Assem. Bill No. 1477 (1991-1992 Reg. Sess.), at 2,

17  *see* Ex. E to Beane Decl.  "This bill would in addition exempt transactions where

18  the credit card is used as a deposit to secure payment in the event of default, loss,

19  damage or other similar occurrence.  The card holder's address and phone number

20  are necessary when using a credit card to guarantee hotel reservations, renting a

21  car, and similar transactions."  Dep't of Consumer Affairs, Enrolled Bill Rep. on

22  Assem. Bill No. 1477 (1991-1992 Reg. Sess.), at 3 (Sept. 9, 1991), *see* Ex. F to

23  Beane Decl.

24      By failing to limit their class to those who have purchased movies or video

25  games from Redbox kiosks, plaintiffs have defined the class in such a way that it

26  encompasses millions of people who have no claim.

27  _____

[10] The Act does not require that the PII be used to secure payment, only that the credit card is
28  being used as such.  Regardless, there could be scenarios where the use of a ZIP code or email would be
helpful to collect unpaid amounts.

**c.  The Act does not apply to Redbox's collection of email because Redbox is in compliance with federal law.**

Third, plaintiffs' proposed class is overly broad to the extent that it applies to Redbox's collection of emails for the purpose of providing receipts.  Regulations promulgated under EFTA obligate Redbox to make receipts available every time a consumer initiates an electronic fund transfer at the kiosk.  12 C.F.R. § 205.9(a); *see also* fn 4.  As Redbox kiosks are not equipped to provide paper receipts, email is the only way that Redbox can comply with EFTA.  Moreover, Redbox must record the customer's email at the time of the initial transaction so that it can provide the receipt when the transaction completes, i.e., when the consumer returns the discs or meets the maximum rental period.

The Act specifically does not apply where the request and recordation of PII is obligated by federal law or regulation.  Cal Civ. Code § 1747.08(c)(3).  Because the class definition fails to account for this statutory exception, it is overbroad.

**d.  The Act does not apply to Redbox's collection of email because it is not a condition of the transaction.**

Fourth, plaintiffs' proposed class is overly broad because it captures anyone from whom Redbox requested and recorded PII "*in the course of*" a credit card transaction, contrary to the plain language of the Act.  Proposed Order Granting Motion for Class Certification at 2 (emphasis added).

The Act prohibits the request and recordation of PII only when it is a "*condition*" of the credit card transaction.  Cal Civ. Code § 1747.08(a)(2) (emphasis added).  The plain meaning of "condition" is that it acts as a *pre-requisite* to the transaction.  *See* Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/condition.  The Court must follow the plain words of the statute, giving them their usual and ordinary meaning, "because they generally provide the most reliable indicator of legislative intent." *Pineda*, 51 Cal. 4th at 535 (internal quotations and citation omitted).

1    Case law confirms that only requests for PII that are made as a condition to
2    the credit card transaction violate the Act, *not* all requests for PII made in the
3    course of, or during, a credit card transaction.  For example, in *Florez v. Linens' N*
4    *Things, Inc*., 108 Cal. App. 4th 447, 451, 133 Cal. Rptr. 2d 465 (2003), the
5    California Court of Appeals held that "nothing prevents a retailer from soliciting a
6    consumer's address and telephone number for a store's mailing list, if that
7    information is provided voluntarily.  Retailers are not without options in this
8    regard.  A merchant can easily delay the request until the customer tenders
9    payment or makes his or her preferred method of payment known."  To determine,
10   therefore, whether there was a violation, it mattered "whether a consumer would
11   *perceive* the store's 'request' for information as a 'condition' of the use of a credit
12   card."  *Florez*, 108 Cal. App. 4th at 451.  In finding a violation of the Act, the court
13   noted that the retailer requested the plaintiff's telephone number before accepting
14   payment and that the plaintiff provided her telephone number "believing it was
15   required to complete the transaction."  *Id.  See also Pineda*, 51 Cal. 4th at 527
16   ("Believing it necessary to complete the transaction, plaintiff provided the
17   requested information and the cashier recorded it.").

18   To interpret the Act otherwise would lead to the absurd result of penalizing
19   businesses who collect PII in a manner that is separate from the credit card
20   transaction.  For example, a brick-and-mortar retailer might leave a guest book on
21   its counter or information cards that invite guests to provide an address or email in
22   order to receive notifications about sales and events.  Redbox's request for email is
23   no different than an electronic guest book.  The legislature could not possibly have
24   intended to prohibit businesses from collecting consumer information in this way,
25   especially where customers *want* such communications.  *See Starbucks Corp*., 168
26   Cal. App. 4th at 1449 (California law requires resolving ambiguity in statutes
27   "according to the usual, ordinary import of the language, and to avoid absurd
28   consequences, including an unconstitutionally excessive penalty.").

1    Here, the facts establish that providing email was not a condition of the

2  credit card transaction.  The user interface at Redbox kiosks has always provided

3  (and still provides) the customer with the option of entering an email address after

4  the customer swipes his or her credit card.  This option appears after prompting the

5  customer to swipe his or her credit card, and gives the consumer the option of

6  selecting "No Thanks" and continuing with the transaction.  Gibby Decl. ¶ 8, Exs.

7  A, B.  Indeed, Ms. DiSimone never provided her email address to Redbox.[11]

8  Motion at 5; Beane Decl. Ex. A (Rog. No. 8).  Redbox therefore did not collect and

9  record email addresses as a condition of the credit card transaction and did not

10  violate the Act.  Accordingly, including in the class those who provided email

11  addresses renders the class definition overbroad.

12              **2.     The class is not objectively ascertainable because it requires**
              **an inquiry into the customer's state of mind.**
13

14    As explained above, only PII that is requested and recorded as a *condition* of

15  the credit card payment violates the Act, and whether the request was a conditional

16  of the credit card payment depends on the perception of each Redbox customer.  If

17  a class should include all of those customers who provided emails (and, as

18  explained above, it should not), then it should only include those who believed that

19  providing an email address was required to complete the transaction.  Because

20  class membership can therefore be determined only by evaluating the state of mind

21  of each individual class member, class certification should be denied.

22    Courts regularly deny class certification where the determination of class

23  membership is dependent on the potential class member's state of mind.  For

24  example, the Ninth Circuit recently affirmed the denial of class certification where

25  at issue was whether or not each class member had consented to join a rewards

---

26      [11] Mr. Sinibaldi did; and he testified that, despite the clear indication that he could decline to
provide his email, he believed it was required to complete the transaction.  Sinibaldi Dep. at 34:25-37:1,
27  Ex. C to Beane Decl.  While Redbox believes that this is an unreasonable interpretation of its user
interface, Mr. Sinibaldi's belief and experience highlight the extent to which the proposed class is fraught
28  with individualized issues.

program.  *Stearns v. Ticketmaster Corp.*, __ F.3d. __, 2011 WL 3659354, at *8 (9th Cir. Aug. 22, 2011).  The option to join was presented to all putative class members through a webpage that the Ninth Circuit deemed "materially deficient." *Id.*  Despite the fact that each potential class member viewed the same "deficient" webpage, the Court could not objectively ascertain class membership because the claim depended on the extent to which each individual class member knowingly joined the program or had actually been misled.  *Id.*

Other cases affirm that the necessity of making an inquiry into a potential class member's state of mind to determine class membership defeats class certification.  *E.g.*, *Simer v. Rios*, 661 F.2d 655, 673-74 (7th Cir. 1981) (class certification improper where proof depended on state of mind; no procedural device could alleviate burden of separate mini-trials); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 393 (D. Mass. 2007) ("Where individualized fact-finding is required to identify class members, the class fails to satisfy one of the basic requirements for a class action under Rule 23.") (internal quotations and citation omitted); *Oshana*, 225 F.R.D. at 580 (holding class not ascertainable because membership depended on whether each person had knowledge that product contained saccharin).

### D.   Plaintiffs' Claims Lack Commonality Under Rule 23(a)(2)

Ignoring a recent and controlling United States Supreme Court case, plaintiffs urge that the Court should "liberally and permissively construe the commonality requirement."  Motion at 9.  But plaintiffs rely on a Ninth Circuit decision, *Dukes v. Wal-Mart Stores, Inc.*, 509 F.3d 1168 (9th Cir. 2007), that was overturned in June by the Supreme Court.  *Wal-Mart Stores*, 131 S. Ct. at 2541.  Plaintiffs' assertion that they have met the standard of commonality is wrong.

In *Wal-Mart Stores*, the Supreme Court eschewed the liberal and permissive approach toward commonality that was adopted by the Ninth Circuit in *Dukes*.  *See*

1   131 S. Ct. at 2551 (holding that "any competently crafted class complaint literally

2   raises common 'questions'") (internal quotations and citation omitted).  Instead, the

3   Supreme Court held that commonality "requires the plaintiff to demonstrate that

4   the class members have suffered the same injury."  *Id.* (internal quotations and

5   citation omitted).  That is, the claims "must depend on a common contention" and

6   the common contention "must be of such a nature that it is capable of class wide

7   resolution—which means that determination of its truth or falsity will resolve an

8   issue that is central to the validity of each one of the claims in one stroke."  *Id.*

9   This rigorous analysis may, and frequently will, overlap with the merits of the

10  underlying claim.  *Id.* at 2551-52.

11      As explained above, plaintiffs' claims depend on proving whether each class

12  member *perceived* that providing PII was a prerequisite to completing the credit

13  card transaction.  And, as evidenced by the named representatives themselves,

14  class members could have had different perceptions.  Plaintiffs, therefore, have not

15  shown, and cannot show, that the claims depend on a common contention that is of

16  such a nature that the "determination of its truth or falsity will resolve an issue that

17  is central to the validity of each one of the claims in one stroke."  *Id.* at 2545.[12]

18      Accordingly, where the determination of class membership involves an

19  individualized inquiry into the merits, courts deny class certification.  *E.g.*, *id.*;

20  *Mueller*, 200 F.R.D. at 233, 239 (class lacked commonality where court would

21  have to consider merits of individual claims to determine membership); *Endres v.*

22  *Wells Fargo Bank*, 2008 WL 344204, at *11-12 (N.D. Cal. Feb. 6, 2008) (denying

23  class certification in part where damages would require individual inquiry into

24  knowledge, state of mind, and actual harm).

25

26

27

28

---

[12] For the same reasons, plaintiffs' claims are not typical, nor are they adequate representatives. *See Wal-Mart Stores*, 131 S. Ct. at 2551 n.5.

### E.    A Rule 23(b)(3) Class Is Not Appropriate Because Common Issues Do Not Predominate

For the same reason, plaintiffs cannot show that common issues predominate under Rule 23(b)(3).  The Rule 23(b)(3) predominance inquiry focuses on the relationship between the common and individual issues.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  Under the standards of Rule 23(b)(3), which are stricter than commonality, the court should deny certification when "noncommon issues are inextricably entangled with the common issues, or . . . the noncommon issues are too unwieldy or predominant to permit the efficient management of the litigation."  7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1790, at 595-96 (3d ed. 2005).

As explained above, the Court cannot determine class membership without determining whether each customer perceived that the request for PII was a condition of the credit card transaction—a determination that can only be made on an individual basis and that defeats certification under Rule 23(b)(3).  For example, in *Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211, 1226 (3d Cir. 1976), the Third Circuit denied class certification where a claim of tying under the antitrust laws required proof of coercion.  In recognizing that individual issues predominated where issues of coercion and voluntary action are at play, the Court stated:  "What is sufficient to coerce one buyer's choice may not be sufficient to coerce another buyer's choice; an item that one buyer might accept voluntarily, another might accept only if forced to do so."  *Id.* at 1219.

No reasonable alternative exists to compensate for the necessity of this individualized inquiry.  *See id.* at 1225.  Accordingly, if a class were certified, the issue of perception would require mini-trials that could number in the tens of millions.  "[I]f the adjudication of a defense for which the defendant has the burden of proof would necessitate individual inquiries, and those inquiries would predominate over inquiries into common questions, certification should be denied."

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 612 (N.D. Cal. 2010) (denying certification).

> **F.    Plaintiffs Are Not Typical or Adequate Representatives of the Proposed Class Because There Is No Evidence They Purchased from Redbox**

Plaintiffs cannot show that they are typical or adequate representatives because they either did not purchase from Redbox or did not purchase using their own credit card.[13]  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotations and citation omitted).  The typicality and adequacy analysis often merge together because they are both concerned with whether the named plaintiffs suffered the same injury as the class.  *Wal-Mart Stores*, 131 S. Ct. at 2551 n.5.

As explained above, the class, if any, can encompass only those who purchased from Redbox kiosks, not those who rented.  "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."  *Sosna*, 419 U.S. at 403.  Mr. Sinibaldi concedes that he has never purchased from Redbox.  Motion at 5.  Ms. DiSimone "believe[s]" she purchased a movie from Redbox, but there is no record that she did so using her own credit card.  *See* fn 5.  There is no evidence, therefore, that either named plaintiff suffered the only injury of which the class can complain (if any) (purchases of movies or video games from kiosks by a credit card holder conditioned on a request for ZIP code), thereby defeating typicality and adequacy.

---

[13] Given their reliance on the Ninth Circuit's overruled decision in *Dukes v. Wal-Mart* and their proposal of a deficient notice plan backed by no data, Redbox also questions the adequacy of plaintiffs' counsel.  *Sweet v. Pfizer*, 232 F.R.D. 360, 370 (C.D. Cal. 2005) (holding plaintiffs' counsel inadequate because of failure to apply correct federal law, failure to adhere to local rules, and other errors); *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 602-03 (S.D.N.Y. 1992) (holding counsel inadequate because of the poor quality of his memoranda).

*Endres*, 2008 WL 344204, at *11-12 (denying certification in misrepresentation claim in part because representatives did not review relevant marketing materials and therefore lacked standing).[14]

## V.   PLAINTIFFS HAVE NOT SHOWN THAT THE PROPOSED CLASS NOTICE COMPLIES WITH RULE 23

Plaintiffs propose a notice plan in the event of class certification that would (1) email those class members for whom Redbox has emails; and (2) display the notice at all of Redbox's California kiosks for 60 days.  Plaintiffs' proposal does not comply with Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts."

Plaintiffs do not explain the extent to which their plan will reach California consumers who used a credit card at a Redbox kiosk since February 2010, or the cost of such a plan.  That alone should result in the Court's rejection of the plan. *Carnegie v. Household Int'l, Inc.*, 371 F. Supp. 2d 954, 957-58 (N.D. Ill. 2005) (rejecting notice plan; court found it "troubling" plaintiffs offered no information regarding the reach of the proposed publication plan); *Thomas v. NCO Fin. Sys., Inc.*, 2003 WL 22416169, at *7 (E.D. Pa. Oct. 21, 2003) (court could not evaluate reasonableness of notice plan absent information regarding cost and coverage).

The information that is available, however, indicates that the notice plan is not the best practicable method.  While email is the only method by which Redbox can reach any of its customers, it is doubtful that email notice would reach even 50% of any potential class, give that many users provide an invalid email address.[15]  Other emails become invalid or are abandoned.  Gibby Decl. ¶ 16.  A

---

[14] This is assuming the class can complain of any violation at all, given that Redbox is not a brick-and-mortar store and the Act does not apply to it. *Saulic*, 596 F. Supp. 2d at 1335-36; *see also* Motion to Dismiss, Dkt. 15-1; Reply in Support of Motion to Dismiss, Dkt. 25.

[15] Moreover, any class of credit card users is not as easily identifiable as plaintiffs assert. Identifying credit card users (as opposed to debit card or gift card users) is likely to involve considerable work by Redbox, a certain amount of guesswork and assumptions, and possibly assistance from Redbox's payment processor. *See* Hoersten Decl. ¶ 9.

kiosk screen is unlikely to bolster notice and reach a substantial number of past Redbox users, because it is unclear to what extent and how often Redbox users repeatedly visit the kiosks.  *See id.* ¶ 14.  For example, while Mr. Sinibaldi appears to be a frequent renter, Ms. DiSimone has rented only twice.

Rather than propose the best notice practicable, plaintiffs have proposed a method of notice that will avoid their own responsibility to bear the initial cost of notice and instead burden Redbox.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).  Adding a screen to the user interface would take Redbox weeks, consuming valuable resources that are otherwise committed to high-priority projects for the company.  Hoersten Decl. ¶ 10.  Moreover, including a legal notice in the user interface—which would need to be carefully read and perhaps recorded—would likely cause delays at kiosks. Delays are already a cause of frustration for some Redbox users; further delay could result in a significant loss of goodwill for the company.[16]  Gibby Decl. ¶ 15.

If the Court certifies a class, the parties should confer regarding notice and present either a joint plan or competing plans to the Court for approval.

## VI.   CONCLUSION

For the reasons set forth above, plaintiffs' motion for class certification should be denied.

DATED:  October 3, 2011                     **PERKINS COIE LLP**

By: /s/ Donald J. Kula
         Donald J. Kula

Attorneys for Defendant Redbox
Automated Retail, LLC

---

[16] Redbox also has concerns about the language of the proposed notice.  It fails to define "California card holder," leaving consumers to guess whether they need to be California residents.  It also fails to define "personal identification information."  To resolve inquiries, it requires potential class members to write to plaintiffs' counsel, which may be inefficient and burdensome.